UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
                                   :
CAMBRIDGE REALTY CO., LLC          :
and EVA ROSENFELD,                 :   No. 08 Civ. 7745 (WHP)
                                   :
              Plaintiffs,          :
                                   :   MEMORANDUM & ORDER
       -against-                   :
                                   :
ST. PAUL FIRE AND MARINE           :
INSURANCE CO.,                     :
                                   :
              Defendant.           :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/14/2010

WILLIAM H. PAULEY III, District Judge:

Plaintiffs Cambridge Realty Co., LLC ("Cambridge Realty") and Eva Rosenfeld ("Rosenfeld") seek a declaratory judgment against Defendant St. Paul Fire and Marine Insurance Co. ("St. Paul") for indemnification in connection with a personal injury action. All parties move for summary judgment. For the following reasons, Cambridge Realty and Rosenfeld's motion is denied, and St. Paul's motion for summary judgment dismissing this action is granted.

BACKGROUND

I. The Insurance Policy

Cambridge Realty owns and operates a residential rental apartment building in the Bronx (the "Building"). (Plaintiffs' Statement Pursuant to Rule 56.1 ("Pl. 56.1 Stmt.") ¶ 1; Defendant's Response to Plaintiffs' Statement Pursuant to Rule 56.1 ("Def. 56.1 Resp.") ¶ 1.) Since the mid-1990s, John A. Vicinanza Insurance Agency ("Vicinanza Insurance") served as Cambridge Realty's insurance broker. (Def. 56.1 Stmt. ¶¶ 31-32; Pl. 56.1 Resp. ¶¶ 31-32.)

In 2003, Vicinanza Insurance procured commercial liability insurance coverage for the Building. (Defendant's Statement Pursuant to Rule 56.1 ("Def. 56.1 Stmt.") ¶ 29; Plaintiffs' Response to Defendant St. Paul's Rule 56.1 Statement ("Pl. 56.1 Resp.") ¶ 29.)

On May 20, 2003, Vicinanza Insurance sent Cambridge Realty a form insurance proposal created by CMJ Underwriters, Ltd. ("CMJ") for coverage under a St. Paul policy. (Pl. 56.1 Stmt. ¶ 10; Declaration of Michael Fahey dated Nov. 17, 2009 ("Fahey Decl.") Ex. 5: Insurance Proposal ("Proposal").) Vicinanza Insurance also invoiced Cambridge Realty for purchase of the policy. (Pl. 56.1 Stmt. ¶ 9; Fahey Decl. Ex. 6: Invoice from Vicinanza Insurance to Cambridge Realty dated May 9, 2003 ("Invoice").) The CMJ proposal listed the "Agency Name" as Vicinanza Insurance, "Insured Name" as Cambridge Realty, and "Insurer(s)" as St. Paul. (Proposal.) Cambridge Realty tendered the premium payment by check to Vicinanza Insurance, along with the broker's commission. (Def. 56.1 Stmt. ¶ 30; Pl. 56.1 Resp. ¶ 30; Invoice.) Then, St. Paul issued the policy, naming Cambridge Realty as an insured, effective from June 1, 2003 through June 1, 2004 (the "Policy"). (Declaration of Andrew M. Premisler dated Oct. 8, 2009 ("Premisler Decl.") Ex. B: Policy declarations page for Cambridge Realty & Ex. O: Deposition of John Vicinanza dated Feb. 18, 2009 ("Vicinanza Dep.") at 20, 24; Fahey Decl. Ex. 4: St. Paul Liability Insurance Policy No. CK06503745 ("Policy") at 00001.) Vicinanza Insurance received the Policy from CMJ and delivered it to Cambridge Realty. (Pl. 56.1 Stmt. ¶ 8; Vicinanza Dep. at 24.)

The Policy included a notice provision, which stated in relevant part:

> If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person involved must:
>
> * * *
>
> 2. Tell us or our agent what happened as soon as possible. Do this even though no demand for damages has been made against you or any other protected person,

2

but you or another protected person is aware of having done something that may later result in a demand for damages. This notice should include all of the following:
- The time and place of the accident or incident;
- The protected person involved;
- The specific nature of the accident or incident including the type of demand for damages that may result; and
- The names and addresses of any witnesses and injured people.

\* \* \*

(Policy at 00007.) The Policy further provides, "We'll consider notice to any of our authorized representatives the same as notice to us. The notice must include information that will identify the protected person." (Policy at 00026.) The front page of the Policy defines that "[w]e, us, our, and ours mean St. Paul Fire and Marine Insurance Company." (Policy at 00001.) It notes that "[o]ne of our authorized representatives will also countersign the policy," and at the bottom of the page states further, "Our authorized representative is: . . . CMJ Underwriters Ltd." (Policy at 00001.) The Policy does not identify Vicinanza Insurance as an agent or authorized representative of St. Paul. (See Policy.)

Invoices for twelve subsequent premium transactions on the Policy dating between October 15, 2003 and September 14, 2004 designate CMJ as the "Agent." (Premisler Decl. Ex. A: St. Paul Liability Insurance Policy No. CK06503745, Delivery Invoices.)

II. The Underlying Accident

On December 18, 2003, Louise Robinson ("Robinson"), a tenant in the Building, fell in the Building's driveway and fractured her shoulder. (Pl. 56.1 Stmt. ¶¶ 16-17; Def. 56.1 Resp. ¶¶ 16-17.) Robinson went to the hospital and had surgery to repair the fracture a few days later. (Premisler Decl. Ex. M: Deposition of Louise Robinson dated May 1, 2009 ("Robinson Dep.") at 10.)

3

No later than January 2004, Robinson informed Roberto Martillo ("Martillo"), the building superintendent, about the accident. (Def. 56.1 Stmt. ¶¶ 9-10; Pl. 56.1 Resp. ¶¶ 9-10.) Martillo failed to report Robinson's accident to Cambridge Realty or to Rosenfeld, the property manager. (Pl. 56.1 Stmt. ¶¶ 2, 28; Def. 56.1 Resp. ¶¶ 2, 28; Affidavit of Eva Rosenfeld dated Nov. 17, 2009 ("Rosenfeld Aff.") ¶ 7.)

Robinson claims that in February 2004 she encountered Rosenfeld in the driveway and informed her of the accident. (Robinson Dep. at 21.) Rosenfeld agrees that a conversation took place. In July 2004, Rosenfeld told a St. Paul claims examiner that the conversation occurred in January or February 2004. (Premisler Decl. Ex. E: Transcript of audio tape interview of Eva Rosenfeld dated July 21, 2004 at 17-18.) Five years later, Rosenfeld testified that the conversation with Robinson occurred on April 11, 2004. (Premisler Decl. Ex. N: Deposition of Eva Rosenfeld dated Mar. 24, 2009 ("Rosenfeld Dep.") at 25.) Rosenfeld concedes that Robinson told her "she had fallen in the driveway, . . . pointed to the spot on the driveway where she said she had fallen," and said "she went to the hospital." (Rosenfeld Aff. ¶ 15.) When Rosenfeld asked Robinson whether she planned to bring a lawsuit, Robinson demurred. (Robinson Dep. at 21-22; Rosenfeld Aff. ¶ 16.) After their encounter, Rosenfeld took a photograph of the spot identified by Robinson and put it in Robinson's tenant file. (Rosenfeld Aff. ¶ 18.)

III. Notice of Occurrence to Vicinanza

On April 12, 2004, Rosenfeld reported Robinson's fall to Vicinanza Insurance. (Pl. 56.1 Stmt. ¶¶ 29-32; Def. 56.1 Resp. ¶¶ 29-32.) As property manager, Rosenfeld's duties included reporting tenant accidents, and she concedes she was aware of the possibility that

4

Robinson would file suit. (Pl. 56.1 Stmt. ¶ 3; Def. 56.1 Resp. ¶ 3; Rosenfeld Dep. at 46-47.) Rosenfeld claims that a Vicinanza Insurance employee took her report without comment. (Rosenfeld Aff. ¶ 21.) No one notified St. Paul.

Although Rosenfeld knew Vicinanza Insurance was Cambridge Realty's broker (Rosenfeld Dep. at 47), Plaintiffs assert their belief that Vicinanza Insurance was authorized by St. Paul to receive any notice required under the Policy. (Pl. 56.1 Stmt. ¶ 33; Rosenfeld Aff. ¶¶ 12-13.) Rosenfeld testified she did not notify St. Paul because she relied on the insurance broker to do so. (Rosenfeld Dep. at 49, 59-60.) However, she also acknowledged she never had a conversation with anyone at St. Paul in which they indicated "in any way that Vicinanza Insurance [] represent[ed] St. Paul." (Rosenfeld Dep. at 93.)

St. Paul denies any agency contract, agreement, or relationship with Vicinanza Insurance. (Def. 56.1 Stmt. ¶¶ 24-25.) Further, John Vicinanza ("Vicinanza"), sole owner of Vicinanza Insurance, testified his company was not an agent or authorized representative of St. Paul and denied ever telling Cambridge Realty or its employees that his company was St. Paul's agent. (Vicinanza Dep. at 8-9, 27-28.)

IV. Underlying Action & Notice of Claim

In July 2004, Cambridge Realty received a demand letter from Robinson's attorney advising that Robinson would pursue claims against Cambridge Realty stemming from her December 18, 2003 fall. (Pl. 56.1 Stmt. ¶ 34; Def. 56.1 Resp. ¶ 34.) On July 14, 2004, Rosenfeld faxed that letter to Vicinanza Insurance, which, in turn, forwarded it to CMJ. (Pl. 56.1 Stmt. ¶ 35; Def. 56.1 Resp. ¶ 35; Rosenfeld Dep. at 57.) CMJ directed Vicinanza Insurance to prepare the Acord General Liability Notice of Occurrence/Claim form (the "Claim Form"). (Pl.

56.1 Stmt. ¶ 35; Def. 56.1 Resp. ¶ 35.) Vicinanza Insurance then collected information about the claim from Rosenfeld, prepared the Claim Form, and sent it to CMJ. (Pl. 56.1 Stmt. ¶¶ 36-38; Def. 56.1 Resp. ¶¶ 36-38.) The Claim Form lists Vicinanza Insurance as the "Producer," Cambridge Realty as the "Insured," and St. Paul as the "Company." (Premisler Decl. Ex. D: Fascimile from CMJ to Rick Futterman dated July 19, 2004 ("Faxed Claim Form") at CMJ-CF-028.)

July 19, 2004 was the first time that St. Paul received notice of Robinson's accident. On that day, CMJ faxed the prepared Claim Form and Robinson's attorney's demand letter to a St. Paul claims specialist. (Def. 56.1 Stmt. ¶¶ 37-38; Faxed Claim Form.) St. Paul commenced an investigation of the claim. (Def. 56.1 Stmt. ¶ 40; Pl. 56.1 Resp. ¶ 40.) St. Paul's claims specialist interviewed Rosenfeld on July 21, 2004, inspected the accident site, and took photographs. (Def. 56.1 Stmt. ¶¶ 41, 45; Pl. 56.1 Resp. ¶¶ 41, 45.) On August 10, 2004, St. Paul disclaimed coverage to Cambridge Realty for untimely notice. (Premisler Decl. Ex. F: Letter from St. Paul to Rosenfeld dated Aug. 10, 2004 at 1-2.)

In November 2004, Robinson sued Cambridge Realty and Rosenfeld in Bronx County Supreme Court for negligence in connection with her December 18, 2003 accident. (Def. 56.1 Stmt. ¶¶ 49-50; Pl. 56.1 Resp. ¶¶ 49-50.) They retained counsel. (Pl. 56.1 Stmt. ¶ 47; Def. 56.1 Resp. ¶ 47.) On June 10, 2005, Plaintiffs advised St. Paul that a negligence action had been filed and demanded St. Paul defend and indemnify them. (Pl. 56.1 Stmt. ¶ 48; Def. 56.1 Resp. ¶ 48.) By letter dated June 15, 2005, St. Paul disclaimed coverage because of late notice. (Fahey Decl. Ex. 11: Letter from St. Paul to Joseph Santo, Esq. dated June 15, 2005.)

On September 25, 2008, judgment was entered against Cambridge Realty and Rosenfeld jointly and severally, following a jury trial. (Pl. 56.1 Stmt. ¶¶ 50-53; Def. 56.1 Resp.

¶¶ 50-53.) Cambridge Realty satisfied the judgment. Rosenfeld did not pay any part of the judgment or incur any costs to defend the underlying action. (Def. 56.1 Stmt. ¶¶ 56-58; Pl. 56.1 Resp. ¶¶ 56-58.)

## DISCUSSION

I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. The court draws "all factual inferences in favor of the non-moving party for purposes of summary judgment, or, when cross-motions for summary judgment are filed, against the party whose motion is under consideration." Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005) (quotation marks and citations omitted). If the moving party meets its burden to "show that no genuine factual dispute exists," Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes, 398 U.S. at 157), the non-moving party must then set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 322-23.

7

## II. Notice of Occurrence Requirement

### A. Legal Standard

"In New York State, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995). "The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." Omni Quartz, Ltd. v. CVS Corp., 287 F.3d 61, 64 (2d Cir. 2002). "A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the agreement itself, and concerning which there is no reasonable basis for a difference of opinion." Greenfield v. Philles Records, Inc., 780 N.E.2d 166, 170-71 (N.Y. 2002) (internal quotation marks omitted). "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning . . . ." White v. Cont'l Cas. Co., 878 N.E.2d 1019, 1021 (N.Y. 2007). "If the terms of a policy are ambiguous, however, any ambiguity must be construed in favor of the insured and against the insurer." White, 878 N.E.2d at 1021; see Sylvan Beach, 55 F.3d at 115.

### B. Notice Provision of the Policy

Plaintiffs argue that the Policy either did not require notice of Robinson's accident or was ambiguous on whether notice was required. Yet the Policy plainly states, "If an accident or incident happens that may involve liability protection provided in this policy, you or any other protected person must . . . [t]ell us or our agent what happened as soon as possible." Plaintiffs' argument attempts to circumvent the plain language of the Policy requiring notice. Plaintiffs' proffered interpretation is unreasonable. See White, 878 N.E.2d at 1021 ("if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract"); cf.

8

Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co., 908 N.E.2d 875, 878 (N.Y. 2009) (extending coverage where both the insurer's and the insured's readings of the contract were reasonable). Accordingly, this Court denies Plaintiffs' motion for summary judgment.

III. Sufficiency of Notice to Broker

A. Agency Authority

Under New York law, "an insurance broker is the agent of the insured, not the insurance company." Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F. Supp. 2d 442, 457 (S.D.N.Y. 2005). Thus, "notice to the ordinary insurance broker is not notice to the liability carrier." Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp., 293 N.E.2d 76, 79 n.3 (N.Y. 1972). "Notice to the broker will constitute such notice, however, if it is established that the broker was acting as the carrier's agent" under actual or apparent authority. Bennion v. Allstate Ins. Co., 727 N.Y.S.2d 222, 224 (4th Dep't 2001).

"Actual authority is created by direct manifestations from the principal to the agent." Reiss v. Societe Centrale Du Groupe Des Assurances Nationales, 235 F.3d 738, 748 (2d Cir. 2000) (internal alterations omitted). Both St. Paul and Vicinanza deny that Vicinanza Insurance had any actual agency relationship with St. Paul, and Plaintiffs offer no evidence to the contrary. Accordingly, Vicinanza Insurance had no actual authority to receive notice of an occurrence or claim from insureds on behalf of the insurer St. Paul.

Apparent authority "arises from the written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third party to believe that the principal consents to have an act done on his behalf by the person purporting to act for him." Green Door Realty Corp. v. TIG Ins. Co., 329 F.3d 282, 289 (2d Cir. 2003) (internal quotations and

9

alterations omitted). "The agent cannot by his own acts imbue himself with apparent authority." Hallock v. State of N.Y., 474 N.E.2d 1178, 1181 (N.Y. 1984). "Although it is possible for apparent authority to arise absent direct contact between the principal and the third party, essential to the creation of apparent authority are words or conduct of the principal, communicated to a third party." In re Cohen, No. 09 Civ. 3724 (JFB), 2010 WL 92922, at *10 (E.D.N.Y. Jan. 6, 2010) (citing Hallock, 474 N.E.2d at 1181). This includes information the third party receives "from authorized statements of the agent [or] from documents or other indicia of authority given by the principal to the agent." Bank of Am., N.A. v. Terra Nova Ins. Co. Ltd., No. 01 Civ. 0646 (LMM), 2005 WL 1560577, at *5 (S.D.N.Y. June 30, 2005).

In the context of insurance coverage disputes, courts have found apparent authority where the broker's "role went far beyond that of solicitor of the liability policy, including responsibilities such as collecting premiums, issuing the policy, and being designated as an agent or broker for the insurer." U.S. Underwriters Ins. Co. v. Landau, 679 F. Supp. 2d 330, 343 (E.D.N.Y. 2010); see also Green Door, 329 F.3d at 289-290. However, "a broker is not the agent of an insurer merely because the broker procures a policy from that insurer." Phila. Indem. Ins. Co., 379 F. Supp. 2d at 457 & n.7.

The evidence of Vicinanza Insurance's apparent authority is insufficient. First, Plaintiffs' payment to their broker of a premium payment along with the broker's commission upon procurement of the policy does not automatically invest the broker with "apparent authority to bind the principal without limitation." Ford v. Unity Hosp., 299 N.E.2d 659, 664 (N.Y. 1973). This is particularly true where the record reflects that all subsequent premium transactions were conducted through St. Paul's designated "Agent" CMJ. Moreover, the broker's acceptance, without objection, of notice of occurrence and notice of claim is of no moment because a broker

"cannot through [its] acts alone clothe [it]self with apparent authority." Shaw Temple A.M.E. Zion Church v. Mt. Vernon Fire Ins. Co., 605 N.Y.S.2d 370, 376 (2d Dep't 1993). Similarly, that Vicinanza Insurance possessed and prepared forms to report claims is unavailing even if it was "standard operating procedure." While "it is a common practice for insureds to notify their brokers rather than their carriers, in the event of a claim or lawsuit . . . [New York courts] emphasize that insureds do so at their peril since the law is clear: the policy requirement that the notice must be provided to the carrier trumps any informal arrangement or practice engaged in between insureds and their brokers." Gershow Recycling Corp. v. Transcon. Ins. Co., 801 N.Y.S.2d 832, 834 (2d Dep't 2005).

Additionally, the acts of St. Paul's agent and authorized representative CMJ did not imbue Vicinanza Insurance with apparent authority to receive notice under the Policy. Indeed, the CMJ proposal to Cambridge Realty for coverage by St. Paul demonstrates CMJ's authority to act on St. Paul's behalf, and the designation of Vicinanza Insurance as the "Agency Name" is understood in context to designate the agency which brokered the deal. See Cohen v. Utica First Ins. Co., 436 F. Supp. 2d 517, 527 (E.D.N.Y. 2006) ("[T]he use of the term 'agent'" is "not conclusive as to whether an agency relationship existed," which instead "hinges predominately on the facts and circumstances of a particular case."). CMJ's July 2004 instruction that Vicinanza Insurance prepare the Claim Form is unavailing. That instruction came months after Plaintiffs gave notice of the occurrence and could not clothe the broker with retroactive apparent authority.

Plaintiffs concede that St. Paul never stated that Vicinanza Insurance represented it in any way. There are no documents showing that St. Paul had authorized Vicinanza Insurance to receive notice on its behalf. See Ford, 299 N.E.2d at 664 ("[t]he apparent authority for which

11

the principal may be held liable must be traceable to him"). Because Vicinanza Insurance did not have apparent authority to receive notice of occurrence or claim on behalf of St. Paul, notice to Vicinanza Insurance did not constitute notice to St. Paul.

### B. Ambiguity on Whom to Notify

Under New York law, the notice provision in insurance contracts has been found ambiguous where "it use[s] the pronouns 'we,' 'us,' and 'our' to describe who should be notified without clearly identifying [the insurer] as the party to whom those terms appl[y]." Jeffrey v. Allcity Ins. Co., 809 N.Y.S.2d 174, 174 (2d Dep't 2006). "[G]iven the ambiguity, [such a] contract should be interpreted to allow notice to [the insured's] broker." Jeffrey, 809 N.Y.S.2d at 174. Because the Policy here plainly states "[w]e, us, our, and ours means St. Paul Fire and Marine Insurance Company," this exception is inapplicable.

## IV. Timeliness of Notice

"Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." Sparacino v. Pawtucket Mut. Ins. Co., 50 F.3d 141, 143 (2d Cir. 1995). "New York courts have adhered strictly to prompt notification provisions, even for losses which appear insubstantial or which in the insured's estimation may not ultimately ripen into a claim." Myers v. Cigna Prop. & Cas. Ins. Co., 953 F. Supp. 551, 556 (S.D.N.Y. 1997) (collecting cases). "A provision in an insurance policy that timely notice be given after an occurrence 'merely requires that notice be given within a reasonable time under all of the circumstances.'" Green Door, 329 F.3d at 287 (quoting Acker-Fitzsimons, 293 N.E.2d at 79). This standard covers provisions like the one in the Policy requiring notice "as soon as possible." Abner, Herrman & Brock, Inc. v. Great N. Ins. Co., 308

F. Supp. 2d 331, 337 (S.D.N.Y. 2004) (notice required "as soon as possible"); Myers, 953 F. Supp. at 556 (same).

"Absent a valid excuse, a failure to satisfy the notice requirement vitiates the policy." Acker-Fitzsimons, 293 N.E.2d at 78. A "plaintiff[] ha[s] the burden of showing that there was a reasonable excuse for [a] delay," Argentina v. Otsego Mut. Fire Ins. Co., 655 N.E.2d 166, 167 (N.Y. 1995), namely, that "the insured either lacked knowledge of the occurrence or had a reasonable belief in nonliability." Olin Corp. v. Ins. Co. of N. Am., 966 F.2d 718, 724 (2d Cir. 1992). Generally, if "an excuse or explanation is offered for delay in furnishing notice, the reasonableness of the delay and the sufficiency of the excuse are matters to be determined at trial." Travelers Ins. Co. v. Volmar Constr. Co., Inc., 752 N.Y.S.2d 286, 288 (1st Dep't 2002). However, the reasonableness of the delay "may be determined as a question of law when (1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." State of N.Y. v. Blank, 27 F.3d 783, 795 (2d Cir. 1994). As to the second prong, the court may find a delay "unreasonable as a matter of law when either no excuse is advanced or a proffered excuse is meritless." Olin Corp., 966 F.2d at 724.

Here, "there are no disputed issues of fact that are material to . . . whether [Plaintiffs] provided [St. Paul] with reasonable notice of the occurrence and claim." Blank, 27 F.3d at 795. Plaintiffs concede awareness of Robinson's accident as of April 11, 2004, and Rosenfeld effectively acknowledged the potential for liability by (1) asking Robinson if she intended to file suit; (2) taking a photograph of the hole and placing it in Robinson's file; and (3) notifying the broker of the accident the next day. Thus, Plaintiffs may not avail themselves of the excuses that they lacked knowledge of the occurrence or had a reasonable belief of nonliability as of April 11, 2004. See Acker-Fitzsimons, 293 N.E.2d at 79-80 (finding no valid

13

excuse for delay where managing agent of insured property was "sufficiently concerned" about incident to "instruct[] his insurance broker to inform the carrier").

Where no meritorious excuse is offered, "courts have found relatively short periods to be unreasonable as a matter of law," Volmar, 752 N.Y.S.2d at 288, including delays of three months or less. See Myers, 953 F. Supp. at 556-57 (two month delay unreasonable); Juvenex Ltd. v. Burlington Ins. Co., 882 N.Y.S.2d 47, 48 (1st Dep't 2009) (two month delay unreasonable); Republic N.Y. Corp. v. Am. Home Assurance Co., 509 N.Y.S.2d 339, 340 (1st Dep't 1986) (45 day delay unreasonable); see also Blank, 27 F.3d at 796 (delays in notice of occurrence or claim "as short as 29 days have been found unreasonable" (collecting cases)). Accordingly, this Court finds the three month delay between Plaintiffs' recognition of possible liability and St. Paul's receipt of notice unreasonable under the circumstances.

V. Disclaimer of Coverage to Rosenfeld

"An insurer must give written notice of disclaimer on the ground of late notice 'as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability,' and failure to do so 'precludes effective disclaimer.'" Firemen's Fund Ins. Co. of Newark v. Hopkins, 666 N.E.2d 1354, 1355 (N.Y. 1996) (quoting Hartford Ins. Co. v. Cty. of Nassau, 389 N.E.2d 1061, 1062 (N.Y. 1979)). "An insurer is presumed to be aware of the untimeliness of notice as a ground for disclaimer of liability upon first receiving such notice." U.S. Underwriters Ins. Co. v. A & D Maja Constr., Inc., 160 F. Supp. 2d 565, 570 (S.D.N.Y. 2001). However, the duty of the named insured to give timely notice "extends to 'additional insureds' under any policy, and notice by one insured will not be imputed as notice by another." U.S. Underwriters Ins. Co. v. Kum Gang Inc., 443 F. Supp. 2d 348, 360 (E.D.N.Y. 2006).

"Neither notice provided by another insured nor the insurer's actual knowledge of the claim satisfies the contractual obligation of an insured to give timely notice." Roofing Consultants, Inc. v. Scottsdale Ins. Co., 709 N.Y.S.2d 782, 783 (4th Dep't 2000). Thus, "[a]n insurer is not obligated to disclaim coverage until an additional insured [her]self provides notice of accident or claim." Kum Gang, 443 F. Supp. 2d at 360 (citing Roofing Consultants, 709 N.Y.S.2d at 783).

Because the Claim Form and demand letter forwarded to St. Paul on July 19, 2004 only identified claims against Cambridge Realty and only sought coverage for that entity, St. Paul's obligation to disclaim coverage extended only to Cambridge Realty. Moreover, in June 2005, when St. Paul finally received a request to extend coverage to Rosenfeld, it promptly disclaimed coverage five days later. See Temple Constr. Corp. v. Sirius Am. Ins. Co., 837 N.Y.S.2d 689, 692 (2d Dep't 2007) (delay of eight days in disclaiming coverage after receiving notice was reasonable). Accordingly, St. Paul timely disclaimed coverage to Rosenfeld.

## CONCLUSION

For the foregoing reasons, Defendant St. Paul Fire and Marine Insurance Co.'s motion for summary judgment dismissing this action is granted. Plaintiffs Cambridge Realty Co., LLC and Eva Rosenfeld's motion for summary judgment is denied. The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated:   June 14, 2010
         New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

David Feureisen, Esq.
Bartels & Feureisen, LLP
925 Westchester Avenue, Suite 304
White Plains, NY 10604
*Counsel for Plaintiffs*

Stephen M. Lazare, Esq.
Andrew M. Premisler, Esq.
Lazare Potter & Giacovas LLP
950 Third Avenue
New York, NY 10022
*Counsel for Defendant*